IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division

| | | |
|---|---|---|
| RODNEY A. SMITH,<br>    Movant, | )<br>)<br>) | |
| v. | ) | No. 1:11mc14 |
| TELE-TOWN HALL, LLC,<br>    Respondent. | )<br>)<br>) | |

## MEMORANDUM OPINION

This case presents the question, unresolved in this circuit, whether the jurisdictionally required amount in controversy with respect to a motion to confirm an arbitration award should be based solely on the original amount claimed in the arbitration demand or should instead be based only on the amount remaining in issue following the award.

For the reasons that follow, the amount demanded in the arbitration controls the determination of the amount in controversy in a motion to confirm an arbitration award. Accordingly, diversity jurisdiction is proper over the confirmation motion here, and the arbitration award must be confirmed.

I.

The essential facts of this case are undisputed and may be succinctly stated. Plaintiff Rodney A. Smith, a Washington, D.C. resident, was the founder and formerly the majority shareholder in defendant Tele-Town Hall, LLC ("TTH"), a Virginia limited liability company with its principal place of business in Virginia. TTH is a provider of services and software related to mass-teleconferencing. Smith formed TTH in 2004. In 2009, Smith sought to sell his interest in the business to Roman Marchevsky, a former TTH software consultant. On or about April 7, 2009, Marchevsky, acting on behalf of his company, Marchevsky LLC, entered into a Membership Interest Purchase Agreement ("MIPA") with Smith to effectuate the buyout.

Shortly after consummation of the buyout, a dispute arose between the parties focusing on three MIPA clauses. The first clause, found in § 5(m) of the MIPA, is a non-compete provision, while the second, § 5(n), is a non-disclosure provision. In essence, these two provisions bind Smith not to compete with TTH and not to disclose TTH's trade secrets, including the source code for TTH's software. The third provision, § 5(k) of the MIPA, states that Smith "shall assert no ownership rights to the name of Tele-Town Hall." *Id.* The MIPA also contains an arbitration clause requiring the parties to submit to binding arbitration before a single arbitrator of the American Arbitration Association in Chicago, Illinois, for any claim arising out of the MIPA. Simultaneous with the execution of the MIPA, the parties also signed a Mutual Release ("Release") extinguishing any possible claims or disputes then existing between them.

On July 21, 2009, TTH filed a verified demand for arbitration with the American Arbitration Association alleging that Smith breached the MIPA and seeking injunctive relief and $500,000 in damages. More specifically, TTH brought six claims before the arbitrator: (i) a breach of contract claim for violating §§ 5(m)-(n) of the MIPA; (ii) a claim for injunctive relief to enforce §§ 5(m)-(n) of the MIPA; (iii) an Illinois Trade Secrets Act claim; (iv) a breach of fiduciary duty claim; (v) an interference with prospective business relations claim; and (vi) an Illinois Deceptive Trade Practices Act claim.[1] TTH voluntarily dismissed the fourth claim—breach of fiduciary duty—prior to the issuance of the arbitrator's award.

---

[1] Although it is not material to the result reached here, the arbitrator found that the breach of contract claims included "ancillary" claims alleging (i) Smith's improper retention of TTH property, including office equipment and client files; and (ii) Smith's improper use of the term "Tele-Town Hall" in violation of § 5(k) of the MIPA. These claims, as with all the claims not voluntarily dismissed, were ultimately denied by the arbitrator. Interim Award at 6.

After holding evidentiary hearings and considering the record and arguments of the parties, the arbitrator issued an Interim Award on August 17, 2010, which stated that:

> [T]his Arbitrator finds against [TTH] and in favor of [Smith] on all of the five remaining claims asserted in Counts I-III and V-VI of the Amended Demand. The requested monetary damages and injunctive relief are therefore denied. Any other relief or claim not expressly granted is also denied.

Interim Award at 16. The arbitrator then granted the parties leave to file additional submissions concerning attorney's fees and costs, which were ultimately resolved in a Final Award on January 26, 2011. In the Final Award, the arbitrator denied Smith's request for attorney's fees but entered an award in favor of Smith and against TTH in the amount of $41,699.80 for arbitration costs and expenses. The Final Award also explicitly incorporated the Interim Award.

The parties do not contend here that the arbitrator's award should be vacated or modified. Nevertheless, TTH opposes Smith's confirmation motion on two grounds. First, TTH contends that subject matter jurisdiction is lacking to confirm the arbitration award. Second, TTH contends that Smith has mischaracterized the arbitrator's award and thus Smith's proposed confirmation order must be modified before entry.

## II.

The question of subject matter jurisdiction must be resolved before addressing the merits of Smith's motion for confirmation. In his motion, Smith asserted federal question jurisdiction based on the Federal Arbitration Act ("FAA"), 9 U.S.C. § 1 *et seq.* Yet, as Smith now (belatedly) concedes, it is well-settled that the FAA does not provide a basis for a federal court's jurisdiction over a motion to confirm, vacate, or modify an arbitration award. *Southland Corp. v. Keating*, 465 U.S. 1, 16 n.9 (1984) ("While the Federal Arbitration Act creates federal substantive law requiring the parties to honor arbitration agreements, it does not create any independent federal-question jurisdiction under 28 U.S.C. § 1331 or otherwise."); *see also*

3

*Choice Hotels Int'l, Inc. v. Shiv Hospitality, LLC*, 491 F.3d 171, 175 (4th Cir. 2007). Having now conceded this point,[2] Smith contends that there is nonetheless federal subject matter jurisdiction over this case pursuant to diversity jurisdiction. *See* 28 U.S.C. § 1332(a).

In this regard, the parties agree that complete diversity of citizenship exists here, as required by § 1332(a), but they sharply dispute whether the amount in controversy meets the requisite statutory threshold for diversity jurisdiction. Smith contends that the amount in controversy is $500,000 because that is the amount sought in TTH's underlying arbitration demand. TTH, on the other hand, argues that because the parties do not seek to set aside or modify the award, and do not dispute the validity of the award, the amount in controversy is no more than $41,699.80—the amount of the arbitrator's final award.

Resolution of the parties' dispute over the manner in which the amount in controversy should be determined properly begins with the well settled principle that in a diversity action the amount in controversy must be determined by the plaintiff's good faith demand at the time of filing, unless it can be determined to a legal certainty that the value of the claim is less than the jurisdictional amount.[3] And it is equally well settled that, because the amount in controversy in a diversity action is determined at the time of filing, jurisdiction over a case is not lost even if the

---

[2] The parties agree that neither the confirmation of the arbitration award itself nor the underlying claims settled by the arbitrator raise any federal questions. Indeed, TTH's claims at arbitration were brought exclusively under Illinois statutory and common law. Thus, the only possible basis for jurisdiction here is diversity jurisdiction.

[3] *See Grupo Dataflux v. Atlas Global Group, L.P.*, 541 U.S. 567, 570-71 (2004) (noting that in diversity cases, "the jurisdiction of the Court depends upon the state of things at the time of the action brought"); *Horton v. Liberty Mut. Ins. Co.*, 367 U.S. 348, 353 (1961) ("The general federal rule has long been to decide what the amount in controversy is from the complaint itself, unless it appears or is in some way shown that the amount stated in the complaint is not claimed 'in good faith.'"); *St. Paul Mercury Indem. Co. v. Red Cab Co.*, 303 U.S. 283, 289 (1938) ("It must appear to a legal certainty that the claim is really for less than the jurisdictional amount to justify dismissal.").

4

ultimate judgment awarded is less than the jurisdictional minimum.[4] These settled principles are not alone dispositive here because this case, unlike the cases embodying these principles, was commenced not by a complaint seeking damages or injunctive relief, but by a motion to confirm an arbitration award. Thus, the appropriate question here is therefore whether the jurisdictionally required amount in controversy is to be determined by reference to the original arbitration demand or by reference to the amount of the actual award or the relief sought by the parties, which in this case is confirmation without modification, vacation, or reopening of the arbitration. If the former is the correct rule, then the requisite $75,000 jurisdictional amount is plainly met here as the original arbitration demand sought $500,000. But it is equally plain that the requisite jurisdictional amount does not exist if the latter rule governs.

This question, as noted by the Fourth Circuit in *Choice Hotels*, 491 F.3d at 175, is one of first impression in this circuit. There, the Fourth Circuit, without resolving the issue,[5] noted that courts have taken three approaches to determining the amount in controversy in an application to confirm, modify, or vacate an arbitration award. Under the "award" approach, courts determine the amount in controversy by reference to the amount of the award regardless of how much was originally demanded in the arbitration proceeding. *See, e.g., Ford v. Hamilton Inv.*, 29 F.3d 255

---

[4] *Grupo Dataflux*, 541 U.S. at 570-71.

[5] The jurisdictional issue presented in *Choice Hotels* was whether a district court had subject matter jurisdiction over a motion to confirm an arbitration award where the plaintiff originally filed its substantive claims in federal court and the matter was thereafter stayed and arbitration ordered. After the arbitration concluded and an award issued, the plaintiff sought to have the federal district court lift the stay and confirm the award. The Fourth Circuit held that the district court had subject matter jurisdiction over the confirmation motion "[b]ecause the district court simply stayed this action, and then reopened it to confirm the award," such that the amount in controversy must be determined from the initial complaint. *Id.* at 176. Accordingly, there was no need to consider the award, demand, or remand approaches, as those approaches are only applicable where there is no existing, stayed federal court case and the first federal court filing is a motion to confirm, vacate, or modify an arbitration award.

5

(6th Cir. 1994); *Baltin v. Alaron Trading Corp.*, 128 F.3d 1466, 1472 (11th Cir. 1997).[6] By contrast, under the "demand" approach, courts equate the amount in controversy with the amount sought in the original complaint or arbitration demand, regardless of the amount ultimately awarded. *See, e.g., Karsner v. Lothian*, 532 F.3d 876, 879 (D.C. Cir. 2008); *Theis Research, Inc. v. Brown & Bain*, 400 F.3d 659, 664-65 (9th Cir. 2005). The final approach, known as the "remand" or "mixed" approach, takes a middle ground, namely that "the amount in controversy in a suit challenging an arbitration award includes the matter at stake in the arbitration, *provided* the plaintiff is seeking to reopen the arbitration." *See Sirotzky v. N.Y. Stock Exchange*, 347 F.3d 985, 989 (7th Cir. 2003) (emphasis added); *accord Peebles v. Merrill Lynch, Pierce, Fenner & Smith Inc.*, 431 F.3d 1320, 1325 (11th Cir. 2005). That is, under the remand approach, if the parties do not seek to reopen arbitration, then, consistent with the award approach, the amount in controversy is the amount of the arbitration award; on the other hand, if they seek to reopen arbitration, the amount in controversy is the amount demanded in the arbitration, which would be consistent with the demand approach.[7]

A careful consideration of each approach points persuasively to the conclusion that the demand approach is soundest because it avoids anomalous and unwarranted inconsistencies in a federal court's jurisdiction. In this regard, there are three distinct anomalies created by the award

---

[6] The continuing vitality of *Baltin* is debatable inasmuch as in *Peebles v. Merrill Lynch, Pierce, Fenner & Smith Inc.*, 431 F.3d 1320, 1325 (11th Cir. 2005), the Eleventh Circuit essentially adopted the remand approach and, in distinguishing *Baltin*, noted that the result in *Baltin* was consistent with that approach because the maximum amount sought in *Baltin*, even if arbitration were reopened, would not exceed $75,000. *Peebles*, 431 F.3d at 1325.

[7] Because of the hybrid nature of the remand approach, it can be difficult to discern whether a court in a particular case is adopting the award approach or the remand approach. *See* Christopher L. Frost, *Welcome to the Jungle: Rethinking the Amount in Controversy in a Petition to Vacate an Arbitration Award Under the Federal Arbitration Act*, 32 Pepp. L. Rev. 227, 246 (2005) (noting the overlap in the award and remand approaches and the difficulty of establishing which circuits have adopted which approach).

and remand approaches. First, under the FAA, a federal court determines diversity jurisdiction over a petition to compel arbitration by reference to the amount in controversy in the parties' underlying dispute. 9 U.S.C. § 4 (providing that a court has jurisdiction over a petition to compel arbitration if it "would have jurisdiction under Title 28, in a civil action or in admiralty of the subject matter of a suit arising out of the controversy between the parties."). Yet, under the award or remand approaches, a motion to confirm, vacate, or modify an arbitration award would be subject to a different jurisdictional rule based on the arbitration award and the relief sought by the parties' motion. As the D.C. Circuit recognized in *Karsner*, adopting a rule that allows a federal court to order arbitration, but disables the federal court from reviewing the resulting arbitration award creates an unwarranted inconsistency. *Karsner*, 532 F.3d at 883 (criticizing the award approach because it "would apply two different jurisdictional tests depending on the action the petitioner seeks, resulting in jurisdiction over a petition to compel arbitration of a claim but not necessarily over a petition to confirm/vacate an arbitration award arising from the same claim").

But the anomalies do not end there. Under the award and remand approaches, a federal court would not have jurisdiction in a case where, as here, the parties proceed directly to arbitration and then seek confirmation of an award that is below the jurisdictional amount required for diversity. But parties can perform an end-run around this limitation by bringing the claims to federal court first and then seeking an order staying the case and ordering the parties to proceed to arbitration. Under those circumstances, after the arbitration concludes and an award is issued, either party may return to the federal court to seek confirmation, vacation, or modification of the arbitration award. Because the motion would be filed in a stayed case, the federal court would continue to have jurisdiction over the motion regardless of the amount of the

7

arbitration award, because jurisdiction is not affected by events that occur after the filing of the case.[8] Thus, parties would have an incentive to begin the journey to arbitration by filing first in federal court in the hope of preserving the option of federal review over any subsequent arbitration award.[9] Such superfluous filings would not only impose unwarranted burdens on courts, but the incentive created by such a framework runs counter to the well established policy favoring arbitration over traditional litigation. *See Qorvis Communs., LLC v. Wilson*, 549 F.3d 303, 308 (4th Cir. 2008) (noting that "[t]he FAA also reflects a strong congressional preference for arbitration").

The final anomaly is more fundamental. If parties forgo arbitration and litigate claims in federal court, the exercise of diversity jurisdiction would of course depend on the amount in controversy in the parties' claims. 28 U.S.C. § 1332(a). Yet, if the parties choose to arbitrate, then under the award or remand approaches, the parties may foreclose the possibility of federal review because the existence of jurisdiction will depend on the outcome of the arbitration. The demand approach, by contrast, removes this disincentive to arbitrate and "permits the district court to exercise jurisdiction coextensive with the diversity jurisdiction that would have otherwise been present if the case had been litigated rather than arbitrated." *Karsner*, 532 F.3d at 884.

---

[8] *See, e.g., Choice Hotels*, 491 F.3d at 176 (concluding that a district court had subject matter jurisdiction over a motion to confirm an arbitration award where "the district court simply stayed this action, and then reopened it to confirm the award," because the amount in controversy is determined from the initial complaint).

[9] This anomaly might be avoided in cases where the court dismisses rather than stays the action, but dismissal is not always warranted. For example, in a case where only a portion of the claims are subject to an arbitration agreement, the entire case may be stayed pending the outcome of the arbitration.

Although courts that have adopted the award or remand approaches do not address these anomalies directly,[10] one might offer the counterargument that diversity jurisdiction can always be foreclosed by events that narrow the controversy before the dispute reaches a federal court,[11] and arbitration is no different from any other extrajudicial event that may precede federal court litigation. As an initial matter, this argument does not address the problem of inconsistent jurisdictional approaches to petitions to compel arbitration on the one hand, and motions to confirm, vacate, or modify arbitration on the other. But more importantly, viewing arbitration on equal footing with any other extrajudicial event is fundamentally inconsistent with Congress's intent to promote arbitration through the FAA and Congress's careful tailoring of the relationship between district courts and arbitration panels.

For example, a district court's review of an arbitration award "is extremely limited, and is, in fact, among the narrowest known to the law." *Long John Silver's Rests., Inc. v. Cole*, 514 F.3d 345, 349 (4th Cir. 2008) (quotations omitted). Indeed, as one commentator has suggested, a district court's review of an arbitration award, while not technically appellate in nature, carries many of the hallmarks of appellate review.[12] Of course, an appellate court would not reject an appeal on jurisdictional grounds merely because a district court, in an otherwise proper diversity case, untimely awarded less than $75,000 in damages. *See Grupo Dataflux*, 541 U.S. at 570-71 (noting the "time of filing" rule in the diversity jurisdiction analysis). So too, the analogy would

---

[10] *See, e.g., Baltin*, 128 F.3d at 1472.

[11] *See Grupo Dataflux*, 541 U.S. at 570-71 (noting the "time of filing" rule for diversity jurisdiction).

[12] *See* Frost, 32 Pepp. L. Rev. at 252 (noting that limited review and, for that matter, the mere fact of review at all, are indicative of the district court's quasi-appellate role in arbitration matters).

suggest, should a district court acting in a review capacity over an arbitration award measure the amount in controversy by reference to the amount in controversy in the underlying dispute.[13]

In any event, courts adopting the award or remand approaches do not defend the approach by addressing and resolving these issues; rather, they rely on a plain reading and application of the "legal certainty" principle in diversity cases. For example, in *Baltin*, the Eleventh Circuit held that a district court lacked jurisdiction to review a motion to vacate an arbitration award of $36,284.69 because "it was a 'legal certainty' that the amount in controversy was less than" the jurisdictional amount. 128 F.3d at 1472. No mention was made of the previously discussed inconsistent jurisdictional outcomes that arise under such a rule.

It is true, of course that a district court lacks diversity jurisdiction where it appears to a legal certainty that a plaintiff's claims amount to less than the jurisdictional amount,[14] but this general principle does not answer the precise question presented here, namely whether the relevant "claims" under this rule are the underlying claims that were arbitrated or the simply the motion for confirmation.[15] It is understandable that some courts would seek to apply the pertinent jurisdictional principles as straightforwardly as possible. But as noted previously, courts should not ignore the broader context of the FAA and the important relationship between arbitration and judicial resolution of disputes. When a party moves to confirm, vacate, or modify an arbitration award, the controversy in issue is not simply the arbitration award but also the

---

[13] *See* Frost, 32 Pepp. L. Rev. at 252.

[14] *See St. Paul's*, 303 U.S. at 89 (noting the "legal certainty" principle in the diversity jurisdiction analysis).

[15] For that matter, it is somewhat telling that a party seeking an award confirmation may does not bring a "claim" for confirmation but rather an "application." *See* 9. U.S.C. § 9 (authorizing "any party to the arbitration may apply to the court . . . for an order confirming the award"). Indeed, Smith styled his filing here as a "motion" and not a complaint.

10

underlying substantive claims. Ignoring the underlying claims and focusing instead solely on the arbitration award divorces the judicial process from the arbitration process in a manner inconsistent with the FAA.

In the end, it is the double standard for jurisdiction created by the award and remand approaches that weighs heavily against their adoption. The demand approach avoids inconsistent jurisdictional outcomes and deters parties from bringing unnecessary litigation just to preserve the possibility of federal review. Accordingly, it is appropriate to adopt the demand approach and to conclude that the amount in controversy in a motion to confirm an arbitration award is the amount demanded in the underlying arbitration.

Here, the parties agree that TTH demanded $500,000 in the underlying arbitration. Because this amount in controversy exceeds the $75,000 threshold in 28 U.S.C. § 1332(a), and because the parties are completely diverse, subject matter jurisdiction exists over Smith's motion to confirm the arbitration award.

## III.

Given the existence of subject matter jurisdiction, it is appropriate to address the merits of Smith's motion to confirm the arbitration award. In this regard, Smith seeks an order adopting the Interim Award and Final Award and specifically finding that the arbitrator:

> (i) dismissed all of TTH's claims; (ii) ruled that Smith was not required to return any of the property in his possession over which TTH had claimed ownership; and (iii) ruled that Mr. Smith was not prohibited from using the term "tele-town hall" generically.

Smith's Proposed Order at 2. In response, TTH contends that each of the three statements above mischaracterizes the arbitration award in some respect. The parties' principal dispute focuses on Smith's use of the term "tele-town hall." Essentially, TTH contends that Smith's proposed confirmation order improperly suggests that Smith has a right to use the term "tele-town hall" in

11

a "generic" sense, a finding that, in TTH's view, the arbitrator did not make, while Smith argues that the arbitrator found his use of the term "tele-town hall" was both generic and legally permissible.

It is clear from the parties' filings and oral arguments that each party hopes that the confirmation order issued here will characterize the arbitration award in a manner that favors that party's potential rights or defenses in a future federal unfair competition or trademark dispute, should one arise. On the one hand, it is not difficult to review the arbitration award and note that the arbitrator neither addressed nor decided any federal claims or questions, such as unfair competition or trademark issues under the Lanham Act. Although the arbitrator stated that Smith's use of the term "tele-town hall" was "generic,"[16] the arbitrator made no finding that the "tele-town hall" mark is "generic" as that term is used in federal trademark law.[17] That question was neither pled nor decided. Thus, it is neither necessary nor appropriate here to characterize or

---

[16] As to Smith's allowable use of the term "tele-town hall," the arbitrator ruled that:

> Smith did use the "Tele-Town Hall" name . . . , but TTH's request that Smith be enjoined from using the name is denied. . . . [T]his Arbitrator finds that Smith did not assert ownership rights to the Tele-Town Hall name when Smith used it in his communications. Rather, Smith was using "Tele-Town Hall" in its generic sense, even though he was inconsistent in his language. (Exh. 117: "Tele-Town Hall concept"; "tele-town hall events"; ["]tele town hall technology"; see also Exh. 95, referring to "Broadnet's Tele-Town Hall product.") Smith also expressly made clear to people that . . . he was no longer affiliated with Tele-Town Hall. . . . Accordingly, the finding and relief sought with respect to paragraph 5(k) [of the MIPA, which states that Smith "shall assert no ownership rights to the name of Tele-Town Hall"] are also denied (although this Arbitrator cautions Smith to carefully use "tele-town hall" only generically in the future).

Interim Award, at 12. As the Interim Award indicates, the arbitrator apparently found that Smith's past use of the term "tele-town hall" did not violate the MIPA. No question was raised nor decided about whether the use of the term might violate federal unfair competition or trademark law.

[17] *See Retail Servs. v. Freebies Publ'g*, 364 F.3d 535, 538 (4th Cir. 2004) (defining "generic" marks and noting that such marks are not entitled to trademark protection).

12

paraphrase the arbitration award in the confirmation order, particularly given the possibility that such language might be used by either party in a subsequent dispute for which it was not intended. In short, no federal unfair competition or trademark issues were decided by the arbitrator, and no such issues are presented or decided here.

Additionally, the FAA does not require analysis or re-characterization of an arbitration award in a confirmation proceeding. The Act merely requires a court to grant confirmation of an award when confirmation is requested by either party. *See* 9 U.S.C. § 9 (requiring a court to confirm an award when requested "unless the award is vacated, modified, or corrected"). Here, as noted, the parties do not seek vacation, modification, or correction of the arbitration award, and in fact, the time limit for such request has passed. *See* 9 U.S.C. § 12 (requiring notice of a motion to vacate, modify, or correct an award "within three months after the award is filed or delivered"); *see also* 710 I.L.C.S. 5/12(b), 13(a) (setting a ninety-day limit for seeking vacation, modification, or correction of an arbitration award).

Should the parties subsequently find themselves in an unfair competition or trademark dispute that calls for interpretation of the arbitration award, the dispute over such interpretation, if any, is more appropriately addressed at that time by a court of competent jurisdiction squarely presented with an actual case or controversy. *See City of Los Angeles v. Lyons*, 461 U.S. 95, 101 (1983) ("It goes without saying that those who seek to invoke the jurisdiction of the federal courts must satisfy the threshold requirement imposed by Art. III of the Constitution by alleging an actual case or controversy."). Accordingly, it is appropriate at this time simply to enter an order confirming the award without characterizing it.

An appropriate Order will issue.

The Clerk is directed to send a copy of this Memorandum Opinion to all counsel of record.

Alexandria, Virginia
July 15, 2011

/s/
T. S. Ellis, III
United States District Judge